# In the United States Court of Federal Claims

No. 20-1458 C
Filed: March 4, 2022

|  |  |
|---|---|
| LAND O'LAKES, INC., | ) |
|         *Plaintiff*, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
|         *Defendant*. | ) |

Jonathan C. Miesen, Land O'Lakes, Inc., St. Paul, MN, for Plaintiff.

Kyle Shane Beckrich, United States Department of Justice, Civil Division, Washington, DC, with whom were Brian M. Boynton, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, and Elizabeth M. Hosford, Assistant Director, for Defendant.

## OPINION AND ORDER

**MEYERS, Judge.**

The Export-Import Bank ("EXIM") provides credit insurance to American companies selling goods outside the United States. To obtain credit insurance, American companies enter insurance contracts with EXIM that contain the policy's terms. Land O'Lakes, Inc. obtained credit insurance from EXIM to cover all sales to Grupo Abilac, S.A. de C.V. ("Abilac") under contracts covering 2016 and 2017. During the period covered by the 2017 contract, Abilac defaulted on a payment and Land O'Lakes presented a claim to EXIM to cover the loss. Because it found that Land O'Lakes had not strictly complied with the contractual requirement to obtain an irrevocable guaranty from Abilac's owners, EXIM denied the claim. Because the revocable guaranty that Land O'Lakes obtained from Abilac's owners (the "Guaranty") did not strictly comply with the terms of the 2017 Policy, which the Policy required, the Court grants the United States' Motion to Dismiss.

**I.     Background**

In 2016 Land O'Lakes, a corporation engaged in the business of producing and distributing dairy products, applied for EXIM credit insurance covering Land O'Lakes's sales to Abilac in Mexico. Sec. Am. Compl. ¶¶ 7, 9, ECF No. 41. Land O'Lakes utilized a private third-party broker, Trade Acceptance Group, Ltd. ("Trade Acceptance"), to assist with development of its EXIM insurance application. *Id.* ¶ 9. Prior to submitting its insurance application, Trade

Acceptance advised Land O'Lakes that EXIM would likely require a guaranty from Abilac's two owners. *Id.* ¶ 10. Before knowing the specifics of the guaranty that EXIM would require, Land O'Lakes obtained a revocable Guaranty from Abilac's owners on February 15, 2016. *Id.* ¶ 10; *see also id.* Ex. 1 at 1, ECF No. 41-1.[1] Trade Acceptance then submitted Land O'Lakes's credit insurance application to EXIM. *Id.* ¶ 12.

EXIM reviewed Land O'Lakes's application and issued a Short Term Single Buyer Export Credit Insurance Policy for Exporters ("2016 Policy") for the period from June 1, 2016, through June 1, 2017. *Id.* ¶¶ 14, 16. The 2016 Policy contains a requirement that Land O'Lakes "obtain and maintain, for any amounts owing by the buyer under the Policy, as valid and enforceable the unconditional and irrevocable guarantee(s) of" Abilac's owners (the "Guarantee Required Endorsement"). Ex. 1 at 10, ECF No. 41-1. EXIM did not question the terms of the Guaranty that Land O'Lakes included in its application. Sec. Am. Compl. ¶ 13, 23, ECF No. 41. Land O'Lakes never submitted any claims to EXIM under the 2016 Policy because Abilac paid for all its covered orders. *Id.* ¶ 17.

In May 2017, Land O'Lakes applied to renew its EXIM credit insurance. *Id.* ¶ 18. In support of the renewal, Land O'Lakes submitted the exact same revocable Guaranty that it used to support its 2016 Policy. *Id.* ¶ 20. EXIM did not express any concerns with the Guaranty and approved a new Short Term Single Buyer Export Credit Insurance Policy for Exporters ("2017 Policy") with coverage from June 1, 2017, through June 1, 2018. *Id.* ¶¶ 19, 23, 29. The 2017 Policy contained an identical Guarantee Required Endorsement. *Id.* ¶ 20.

In April 2018, Abilac ordered $284,259.02 worth of dry milk from Land O'Lakes. *Id.* ¶¶ 30-32. Abilac paid only $31,047.67 and defaulted on the remaining $253,211.35. *Id.* ¶ 33. After demands for payment failed, Land O'Lakes filed its Claim Application with EXIM seeking 90% of the balance of the purchase price due under the defaulted invoices. *Id.* ¶ 40; *see also id.* ¶ 56 (alleging that the EXIM policy obligated it to pay 90% of unpaid amounts owed by Abilac to Land O'Lakes). On January 3, 2019, EXIM denied Land O'Lakes's claim because of the "[a]bsence of policy required enforceable and irrevocable guarantee of 2 individuals." *Id.* ¶ 41 (quoting Ex. 1 at 28, ECF No. 41-1). After some limited back-and-forth between Land O'Lakes and EXIM, Land O'Lakes filed suit in the U.S. District Court for the District of Minnesota, which transferred the suit here based on this Court's exclusive jurisdiction. *Id.* ¶¶ 41-44, 46, 48.

## II. Legal Standard

"A motion to dismiss . . . for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the plaintiff do not entitle him to a legal remedy." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006) (quoting *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)). As the Supreme Court explained, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

---

[1] The Court may rely on exhibits attached to the Complaint without converting this RCFC 12(b)(6) motion into a motion for summary judgment under RCFC 56. *Sharifi v. United States*, 987 F.3d 1063, 1067 (Fed. Cir. 2021); *Martin v. United States*, 96 Fed. Cl. 627, 629 (2011).

550 U.S. 544, 570 (2007)).  And to be plausible on its face, it "does not need detailed factual allegations." *Twombly*, 550 U.S. at 555; *see also Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (Rule 8 "does not require the plaintiff to set out in detail the facts upon which the claim is based, but enough facts to state a claim to relief that is plausible on its face.") (citation omitted).  In other words, the complaint must contain enough detail "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).  "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed. Cir. 1998) (citations omitted).  Nevertheless, the Court "must assume all well-pled factual allegations are true and indulge in all reasonable inferences in favor of the nonmovant." *United Pac. Ins. Co.*, 464 F.3d at 1327-28 (quoting *Anaheim Gardens v. United States*, 444 F.3d 1309, 1314-15 (Fed. Cir. 2006)).

### III. Discussion

For a valid breach of contract claim, Land O'Lakes must allege "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." *ACLR, LLC v. United States*, 147 Fed. Cl. 548, 557 (2020).  The Government argues that EXIM has no legal obligation or duty to pay any amount because Land O'Lakes failed to strictly comply with the insurance agreement's terms, as the Policy requires.  Mot. Dismiss at 4-5, ECF No. 46.

#### A. Land O'Lakes's Guaranty does not comply with the Policy requirements.

"Contract interpretation is a question of law." *Lucent Techs., Inc. v. Gateway, Inc.*, 543 F.3d 710, 717 (Fed. Cir. 2008).  The Court begins its analysis of this breach of contract matter where it must—with the terms of the contract. *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("Contract interpretation begins with the language of the written agreement.").  Contractual terms "are accorded 'their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning.'" *Shaw v. United States*, 131 Fed. Cl. 181, 191 (2017) (quoting *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998)).  The Court must consider the contract "as a whole and interpret[] [it] so as to harmonize and give reasonable meaning to all of its parts." *Id*. (citing *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434-45 (Fed. Cir. 1996)).  Therefore, the Court must "give[] meaning to all parts of the contract," rather than adopting an interpretation "that leaves a portion of the contract useless, inexplicable, void, or superfluous." *Id*. (citing *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)).  With these principles in mind, the Court turns to the contractual language at issue.

The disputed contract language, which is found in a separate endorsement to the 2017 Policy, provides:

> Article 6 of the Policy is hereby amended by the addition of the following new agreement of the *insured*:
>
> "to obtain and maintain, for any amounts owing by the buyer under the Policy, as valid and enforceable the unconditional and irrevocable guarantee(s) of:

3

               Mr. Gabino Cuevas Cortes, Zapopan, MEXICO

               Mr. Carlos Acosta Morelos Y Alvarez, Zapopan, MEXICO."

Ex. 1 at 10, ECF No. 41-1 (emphasis in original).[2] EXIM denied Land O'Lakes's claim because the Guaranty that it obtained is facially revocable. *Id.* at 28. The Guaranty provides that "[t]his Guaranty may be revoked by Guarantors only upon thirty (30) days' prior written notice to [Land O'Lakes], sent by certified mail. Any revocation of this Guaranty shall not relieve Guarantors of any obligation arising prior to the effective date of such revocation." *Id.* at 1.

      According to the Government, the facially revocable Guaranty fails to comply with the 2017 Policy's plain text. *See* Mot. Dismiss at 4-7, ECF No. 46. This argument has clear textual appeal. Given that the Abilac Owners' Guaranty is revocable with nothing more than 30 days' notice from the Guarantors, the Guaranty is not "irrevocable."

      Land O'Lakes, of course, interprets the 2017 Policy differently. According to Land O'Lakes, the only thing that must be irrevocably guaranteed are "any amounts *owing* by the buyer." Resp. at 10, ECF No. 47 (quoting Ex. 1 at 10, ECF No. 41-1) (emphasis added). And Land O'Lakes relies on the Guaranty's provision stating that "[a]ny revocation of this Guaranty shall not relieve Guarantors of any obligation arising prior to the effective date of such revocation." *Id*. Relying on these two provisions, Land O'Lakes contends that for all amounts that were ever "owing" to it, the Guaranty remains irrevocable and fully compliant with the 2017 Policy. *Id*. at 3, 10. This interpretation, too, has some textual appeal because "amounts owing" can imply that the only thing that must be irrevocably guaranteed are debts incurred prior to the revocation of the Guaranty. *Owing*, *Black's Law Dictionary* (11th ed. 2019) (defining "owing" as "[t]hat is yet to be paid").

      But when read in context with the other contract provisions, Land O'Lakes's interpretation is less appealing. The Court, of course, must favor an interpretation that gives meaning to all terms of the contract over one that renders terms meaningless. *See Lockheed Martin IR Imaging Sys., Inc. v. West,* 108 F.3d 319, 322 (Fed. Cir. 1997) (citing *Gould, Inc.*, 935 F.2d at 1274); *McAbee Constr., Inc.,* 97 F.3d at 1434, *reh'g denied and en banc suggestion declined* (1996); *Fortec Constructors v. United States,* 760 F.2d 1288, 1292 (Fed. Cir. 1985) (citing *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1555 (Fed. Cir. 1983)). The 2017 Policy requires Land O'Lakes to "obtain" and "maintain" the "irrevocable guarantee" for "*any* amounts owing by the buyer under the Policy." Ex. 1 at 10, ECF No. 41-1 (emphasis added); ECF No. 48 at 4.

      The central dispute is what the 2017 Policy requires to be irrevocably guaranteed— specifically, the meaning of "any amounts owing by the buyer under the Policy." Ex. 1 at 10, ECF No. 41-1. The Parties do not appear to dispute that the general meaning of this phrase is that Land O'Lakes was required to get a guarantee of Abilac's purchases from Land O'Lakes during the 2017 Policy term. *Compare* Sec. Am. Compl. ¶ 58, ECF No. 41 (Land O'Lakes asserting that "the Guaranty [obtained] was irrevocable for those amounts [purchased and due

---

[2] Because the pages of Land O'Lakes's exhibits are not contiguously numbered, the Court cites to the pagination in the ECF Header.

under the invoices] and [thus] fully satisfied the terms of the Guarantee Required Endorsement for the 2017 Policy") *with* Mot. Dismiss at 7, ECF No. 46 (Government in its Motion to Dismiss asserting that "[b]ecause the 2017 policy began coverage on June 1, 2017, Abilac could have revoked its Guaranty effective July 1, 2017 (thirty days after June 1) and continued to purchase dairy products on credit for the next eleven months."). This makes sense and comports with the rest of the 2017 Policy's terms. Although EXIM in the Guarantee Required Endorsement did not define the phrase "any amounts owing by the buyer under the Policy", the phrase is read most naturally to call for a continuing guaranty of any "insured transactions" under the 2017 Policy. Ex. 1 at 10, ECF No. 41-1. A "continuing guaranty" is one "that governs a course of dealing for an indefinite time or by a succession of credits." *Continuing Guaranty*, *Black's Law Dictionary* (11th ed. 2019). Land O'Lakes did obtain a continuing guaranty from Abilac's owners. Ex. 1 at 1, ECF No. 41-1; ECF No. 41 ¶ 11. Under the Policy, an "insured transaction" is one that meets specific requirements and EXIM would be liable to Land O'Lakes for a percentage of any loss on the transaction. Resp. at 4, ECF No. 47. There is no indication in the 2017 Policy that EXIM sought to compel a guaranty of transactions that would not be covered by the 2017 Policy. And aligning the Guaranty with an "insured transaction" harmonizes the 2017 Policy as a whole. Ex. 1 at 7 (Article 10), ECF No. 41-1. This is because there are no other amounts that the 2017 Policy covers. *Id*. at 2 (Article 2).

The next question is when the Guaranty would fail to comply with the 2017 Policy's requirements. In the Government's view, because Abilac's owners could revoke the Guaranty and continue to order for amounts that would be "owed under the Policy," when obtained the Guaranty did not comply with the 2017 Policy's requirements. ECF No. 48 at 4. And the 2017 Policy supports the Government's view. To qualify as an "insured transaction" for which EXIM would be liable, a transaction must: (1) not include military equipment or sales to militaries; (2) be shipped during the 2017 Policy period; (3) be memorialized on paper; and (4) be an export sale with documentation of shipping from a third-party shipper showing the transport of products from the United States to Mexico. Ex. 1 at 2 (Article 3), ECF No. 41-1. Thus, the Government argues that the Guaranty failed to comply with the 2017 Policy's requirements when Land O'Lakes obtained it because it could allow insured transactions that would not be guaranteed. Mot. Dismiss at 7, ECF No. 46.

While Land O'Lakes concedes that it could not maintain the Guaranty for the entirety of the 2017 Policy period, it argues that the Guaranty would comply with all 2017 Policy requirements until such time as Abilac's owners revoked it. *See* Sec. Am. Compl. ¶¶ 58, 60, ECF No. 41. According to Land O'Lakes, this is the only way to give meaning to the phrase "for any amounts owing by the buyer under the Policy." Resp. at 11, ECF No. 47. Not so. As explained above, the best way to harmonize the 2017 Policy is to read this phrase to require a continuing guaranty because there was no pre-existing obligation when the 2017 Policy was issued. The phrase "amounts owing" is often used for a guaranty covering a pre-existing debt evidenced in a promissory note. *See, e.g., Farmers Livestock Mkt., Inc. v. Deaton*, No. 2:12-CV-383, 2013 WL 4451074 (E.D. Tenn. Aug. 16, 2013); *Rolfs v. Comm'r*, 488 F.2d 1092 (9th Cir. 1973). But that is not the case here because there was no pre-existing debt when the Parties executed the 2017 Policy.

Further, it is not clear that Land O'Lakes could maintain the Guaranty at all. An irrevocable guaranty is defined as "[a] guaranty that cannot be terminated unless the other parties

consent." *Irrevocable Guaranty*, *Black's Law Dictionary* (11th ed. 2019). Thus, all that "maintain" requires is that Land O'Lakes not release the Guaranty. But that does nothing to limit the Guarantors' ability to revoke the Guaranty with nothing more than 30 days' notice. This only reinforces the conclusion that the Guaranty that Land O'Lakes obtained failed to comply with the 2017 Policy requirements.

Additionally, the fact that the Guaranty was unilaterally revocable by the Abilac owners highlights the fact that Land O'Lakes was not in strict compliance with the Guarantee Required Endorsement. Ex. 1 at 1, 10, ECF No. 41-1. The only entities that were able to maintain the Guaranty in force were Abilac's owners. *Id*. at 1. But the plain language of the Guarantee Required Endorsement required that Land O'Lakes "maintain" an irrevocable guaranty, prohibiting Land O'Lakes from granting consent for the termination of the Guaranty. *Id*. at 10. As the Government noted, "[t]o maintain means '[t]o continue,' '[t]o continue in possession of,' or 'to engage in general repair and upkeep.'" Mot. Dismiss at 7, ECF No. 46 (quoting *Maintain*, *Black's Law Dictionary* (11th ed. 2019)). Land O'Lakes's inability to maintain the Guaranty on its own reinforces the conclusion that the Guaranty does not comply with the 2017 Policy requirements.

**B.     Because here any ambiguity would be patent, the Court will not interpret the 2017 Policy against EXIM as the drafter.**

Land O'Lakes argues that the Guarantee Required Endorsement contains latent ambiguities and therefore must be "strictly construed against Ex-Im Bank, as the drafter of the Guarantee Required Endorsement, and in favor of Land O'Lakes, as the insured under a policy of insurance." Sec. Am. Compl. ¶ 59, ECF No. 41. Nearly four full pages of the Government's Motion to Dismiss are devoted to arguing that EXIM's interpretation of the 2017 Policy is facially reasonable. Mot. Dismiss at 9-13, ECF No. 46. The Government asserts that any ambiguity in the Guarantee Required Endorsement is patent, which triggered Land O'Lakes's duty to inquire and therefore the Court cannot interpret the 2017 Policy against EXIM as the drafter. *Id*. The Government replies that "Land O'Lakes failed to respond to this argument in its response, and thus waives its argument related to *contra proferentum* [sic] and concedes that any ambiguity is patent." ECF No. 48 at 2, n.1. "Contra proferentem" is the legal doctrine in which "in the interpretation of documents, ambiguities are to be construed unfavorably to the drafter." *Contra proferentem*, *Black's Law Dictionary* (11th ed. 2019). But even if Land O'Lakes did not waive its argument related to *contra proferentem*, it fails on the merits. "Whether an ambiguity is patent or latent is . . . a question of law." *NVT Techs., Inc.*, 370 F.3d at 1159 (citing *Interwest Constr. v. Brown*, 29 F.3d 611, 614 (Fed. Cir. 1994)). While the Court does not view the 2017 Policy as ambiguous, to the extent there is any ambiguity that ambiguity is patent. Therefore, the Court will not construe the text of the Guarantee Required Endorsement against the Government. *See id*. at 1162 (citing *Edward R. Marden Corp. v. United States*, 803 F.2d 701, 705 (Fed. Cir. 1986)).

Land O'Lakes itself acknowledges that the Policy's language "is not a model of clarity" regarding what must be guaranteed. Resp. at 9, ECF No. 47 ("At the outset, it should be acknowledged that the phrase 'amounts owing by the buyer under the Policy' *is not a model of clarity*.") (emphasis added). This lack of clarity is clear on the face of the 2017 Policy, making it a patent ambiguity. "A patent ambiguity is one that is 'obvious, gross, [or] glaring, so that . . .

[there exists] a duty to inquire about it at the start.'" *NVT Techs., Inc.*, 370 F.3d at 1162 (quoting *H & M Moving, Inc. v. United States*, 499 F.2d 660, 671 (Ct. Cl. 1974)). Land O'Lakes's acknowledgment that the 2017 Policy language "is not a model of clarity" compels the finding that any resulting ambiguity is patent rather than latent. Therefore, the Court will not interpret the Policy against EXIM as the drafter. *See id.*

### C.  EXIM did not waive the 2017 Policy requirements by not objecting to Land O'Lakes's Guaranty.

Land O'Lakes also argues that because it submitted the Guaranty to EXIM in support of both its 2016 and 2017 Policy applications and EXIM accepted it without question, EXIM waived its objection to the adequacy of the Guaranty. Resp. at 11, ECF No. 47. According to Land O'Lakes, if EXIM thought the Guaranty did not satisfy the 2017 Policy's requirements, it would have said so when Land O'Lakes submitted it. *Id.* This argument is unavailing because the 2017 Policy states "[n]otwithstanding any other action by Ex-Im Bank, your failure to timely comply with any term or condition of this Policy shall not be deemed to have been excused or accepted by Ex-Im Bank unless explicitly agreed to by Ex-Im Bank in writing." Ex. 1 at 6 (Article 9(H)), ECF No. 41-1. The agreement of the Parties makes clear that the issuance of the 2016 and 2017 Policies did not constitute a waiver of any guaranty requirements or that Land O'Lakes's Guaranty satisfied the 2017 Policy requirements. *Id.*

Even when an agency accepts an invalid application for insurance, the conditions governing the insurance must be strictly complied with. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 383-85 (1947). That EXIM did not inform Land O'Lakes or Trade Acceptance of any issues with the Guaranty is not relevant. *See* Sec. Am. Compl. ¶¶ 13, 23, ECF No. 41. While Land O'Lakes may have preferred that EXIM inform it that its Guaranty was facially deficient—such that it could cure the defect and then have its application approved with a corresponding irrevocable guaranty—EXIM's acceptance of an invalid application for insurance did not waive any objections to the Guaranty.

### D.  That Guarantors never revoked the Guaranty is not dispositive.

Land O'Lakes argues that the Court should deny the Government's Motion to Dismiss because "the revocation provision could not have caused or contributed to the loss claimed by Land O'Lakes or increased Ex-Im Bank's risk or exposure." *Id.* ¶ 60. This is because the Guarantors never revoked the Guaranty and even if they had, the Guaranty would still apply to all obligations existing at the time of the cancellation. The Government correctly states that such an assertion is without merit because Land O'Lakes failed to strictly comply with the 2017 Policy when it obtained a revocable guaranty. Mot. Dismiss at 8, ECF No. 46. The 2017 Policy mandates strict compliance, providing that EXIM "shall not be liable for any loss [to Land O'Lakes]" if Land O'Lakes does not strictly comply "with any of the terms or conditions of this Policy." Ex. 1 at 3, ECF No. 41-1 (emphasis omitted). Strict compliance requires "exact compliance" with the contract terms; substantial compliance is not enough. *Casey v. Am. Int'l Grp., Inc.*, 707 F. App'x 407, 410 (7th Cir. 2017) (citation omitted).

And other courts have required strict compliance with EXIM policy terms. The Ninth Circuit persuasively interpreted the EXIM policy requirements as requiring the insured party to

"strictly comply with all the contract terms and conditions to recover its losses under the policy." *Seattle Fur Exchange, Inc. v. Foreign Credit Ins. Ass'n*, 7 F.3d 158, 163 (9th Cir. 1993). And strict compliance is an exacting standard that Land O'Lakes' Guaranty does not meet. That is the breach, not an actual revocation.

### IV.   Conclusion

For the reasons stated above the Court **GRANTS** the Motion to Dismiss, ECF No. 46. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

                                                s/ Edward H. Meyers
                                                Edward H. Meyers
                                                Judge